**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| JENNIFER J. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:12cv523 (GBL/IDD) |
| ) | |
| REPUBLIC SERVICES, INC., et al., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S JURY DEMAND**

When Plaintiff Jennifer Taylor applied for employment with Allied Waste Industries, Inc. ("Allied"), she executed a document prominently titled "JURY TRIAL WAIVER AGREEMENT" ("Waiver"). In the Waiver, Plaintiff promised that, if she were hired, any claims under federal or state law that she might have regarding her employment would be resolved by a judge, not a jury. In her deposition, Plaintiff admitted that she knowingly and voluntarily signed the Waiver. *See* Ex. 1-A, at 03:22:17 to 03:22:25. Under well-settled law, the Court should enforce Plaintiff's valid waiver of the right to a jury trial for her employment-related claims. Accordingly, Defendants Republic Services, Inc. ("RSI"), Republic Services of Virginia, LLC ("RSVA"), Jason Callaway, Ronald Krall, Douglas Murphy, and Christopher Rains (collectively, "Defendants") – all of whom fall within the scope of Plaintiff's Waiver – submit this memorandum in support of their Motion to Strike Plaintiff's Demand for a Jury Trial ("Motion").

14902932v.1

## PROCEDURAL BACKGROUND

Plaintiff filed this action alleging six causes of action based on incidents occurring during her employment with Allied and RSVA. The Court has since dismissed four of her claims, leaving only claims of discrimination, harassment and retaliation under Title VII and a tortious interference with business expectancy claim against RSVA, RSI, and four of RSVA's employees.[1] In her Amended Complaint, Plaintiff demanded a jury trial. [Dkt. 1-4, at 57.]

## FACTUAL BACKGROUND

In May 2007, Plaintiff applied for employment with Allied. *See* Ex. 1-A, at 03:20:07 to 03:20:27. As part of the application process, Plaintiff completed an Employment Application.[2] *See* Ex. 1-B (Plaintiff's Employment Application). As part of the Employment Application, Plaintiff completed the one page Waiver, which was prominently titled "**JURY TRIAL WAIVER AGREEMENT**." *Id.* at 13. To ensure that applicants understood the importance and effect of the Waiver, Allied titled it with bold capital typeface and placed it on a stand-alone detachable page that applicants could remove and take home with them before executing it. Moreover, the Waiver encouraged applicants to have a lawyer review it. The Waiver, however, advised applicants that their Employment Applications would not be considered, and they would not be hired, unless they agreed to its terms. *Id.*

Plaintiff signed the Waiver on May 7, 2007. *Id.* In signing the Waiver, Plaintiff agreed to voluntarily waive her right to a jury trial with respect to any claims under federal or state law that she might assert against Allied and any of its "affiliates, subsidiaries, divisions, successors,

---

[1] This Court has dismissed Counts III, IV, VI, and VII of the Amended Complaint, effectively dismissing Defendant Dan Jameson from the case. [Dkt. 43.]

[2] Because Allied operated through numerous subsidiaries, the General Instructions for that Employment Application defined the "Company" as "Allied Waste Industries, Inc., Subsidiaries & Affiliated Entities." Ex. 1-B, at 3.

2

assigns, purchasers, and/or its current, former, or future employees, shareholders, officers, directors and agents." *Id.* The Waiver prominently recognizes that "This document is a Jury Trial Waiver Agreement." *Id.* The Waiver also makes clear that both the Company and Plaintiff were waiving their respective rights to trial by jury for any claims that one party might have against the other. *Id.* After pointing out that Plaintiff was free "to reject this Agreement," it provided that Plaintiff need not sign the Waiver at the time she completed the Employment Application: "If you decide not to sign this Agreement today, you may take it with you and you may consult with any attorney of your choosing to discuss this Agreement before signing it." *Id.* The Waiver also states: "You may take as much time as you want to consider" the agreement. *Id.* Finally, in bold, all capital letter typeface at the bottom of the page, the Waiver states:

> *IMPORTANT:* **BY SIGNING BELOW, I AGREE THAT I HAVE HAD AS MUCH TIME AS I WANTED TO CONSIDER THIS AGREEMENT AND THAT I UNDERSTAND I AM GIVING UP AND WAIVING MY RIGHT TO A JURY TRIAL KNOWINGLY, INTELLIGENTLY, VOLUNTARILY, AND FREE FROM DURESS OR COERCION.**

*Id.*

A little more than a year after Allied hired Plaintiff, Allied was acquired by RSI. *See* Ex. 2 (Declaration of W.T. Eggleston, Jr.), ¶ 3; Compl. ¶ 65. The merged company retained RSI's name post-merger, as well as the Allied name in many market areas (particularly where RSI had not previously operated). *See* Ex. 2, ¶ 3. As part of the restructuring related to that merger, RSI offered Plaintiff a new position with RSVA. Compl. ¶¶ 77-80. Plaintiff accepted that offer in late 2008 and worked for RSVA until her employment ended in September 2011. *Id.* ¶¶ 77-80, 170.

3

**ARGUMENT**

**I.     PLAINTIFF KNOWINGLY AND VOLUNTARILY WAIVED HER RIGHT TO A JURY TRIAL.**

Like many rights guaranteed by the U.S. Constitution, a pre-dispute right to a jury trial can be "knowingly and intentionally waived by contract." *Leasing Serv. Corp. v. Crane*, 804 F.2d 828 (4th Cir. 1986). Courts routinely enforce jury trial waiver agreements; the mere fact that the waiver may be contained in a take-it-or-leave-it contract does not render it invalid or unenforceable. For example, the Richmond Division of this Court recently held that an arbitration agreement waiving the right to a jury trial in the employment context did not rise to the level of an adhesion contract because the plaintiffs "had the right to work elsewhere, rather than accept Dillard's terms of employment. A contract of adhesion involves an individual with no choice in the matter." *Bennett v. Dillard's, Inc.*, 849 F. Supp. 2d 616, 621 (E.D. Va. 2011) (upholding arbitration agreement); *see also Senture LLC v. Dietrich*, 575 F. Supp. 2d 724, 727 n.1 (E.D. Va. 2008) ("In Virginia, employment contracts are certainly not always considered adhesion contracts, as Defendants suggest. . . . If an employee has the freedom to consider employment elsewhere and is not bound to continue working for his current employer, an employment agreement will not be considered an adhesion contract.").

Indeed, courts routinely enforce agreements that waive the right to a jury trial and, instead, require arbitration. There is no logical basis to favor the enforceability of such waivers where the dispute is resolved by an arbitrator rather than a federal judge. *See IFC Credit Corp. v. United Bus. Ind. Fed. Credit Union,* 512 F.3d 989, 994 (7th Cir. 2008) ("Agreement to a bench trial cannot logically be treated less favorably than agreement to . . . arbitrate, or litigate in a forum that will not use a jury.").

In this jurisdiction, "[t]he right to a jury trial in federal court is governed by federal law." *Silver v. JTH Tax, Inc.*, 2005 WL 1668060, at *6 (E.D. Va. June 21, 2005) (enforcing jury waiver provision); *cf. Fairfax Co. of Va., LLC v. Samson Realty, LLC*, 74 Va. Cir. 141, 145 (Fairfax 2007) (noting federal precedent guides Virginia state courts in deciding whether to enforce a jury trial waiver and adopting the "knowing and voluntary" federal standard). Under the federal standard, courts will uphold a jury waiver "so long as it is was made knowingly and voluntarily." *Silver*, 2005 WL 1668060, at *6 (internal citation omitted).

Here, Plaintiff knowingly and voluntarily waived her right to a jury trial for any claims relating to her employment. Indeed, she actually <u>admitted</u> in her deposition that her waiver was knowing and voluntary. *See* Ex. 1-A, at 03:22:17 to 03:22:25. Additionally, Plaintiff's waiver was just as conspicuous – if not more so – than other jury waivers upheld in this jurisdiction. For example, in *Dunkin' Donuts Franchised Restaurants, LLC v. Manassas Donut Inc.*, 2008 WL 110474 (E.D. Va. Jan. 8, 2008), the court concluded that the plaintiff had knowingly and voluntarily waived his right to a jury trial when he entered into a franchise agreement with Dunkin' Donuts. The signature page signed by the plaintiff bore the following statement in bold, capital letters:

> **FRANCHISEE ACKNOWLEDGES SECTION 11 OF THE GENERAL TERMS & CONDITIONS OF THIS CONTRACT, WHICH PROVIDES FOR FRANCHISEE'S EXPRESS WAIVER OF RIGHTS TO A JURY TRIAL.**

*Id.* at *7. As the court explained:

> The fact that the waiver clause was listed in a conspicuous manner – in two places, both times in capital letters and once in bold font – weighs in favor of a finding that Defendants knowingly and voluntarily waived their right to a jury trial. Moreover, . . . the fact that the Agreements were, by Dunkin' Donuts' own admission, standardized and non-negotiable, will not invalidate the jury waiver provision.

5

*Id.* at \*\*7-8. The court went on to find that the franchisee's failure to have an attorney review the waiver before signing did not nullify the clause, as he was an experienced businessman and the waiver provisions were conspicuous. *See id.* at \*\*10-11 (citing cases).

As another example, the waiver enforced in *Crane* was located on the back of a boilerplate fine-print contract. 804 F.2d at 833; *see also, e.g.*, *Hitachi Credit Am. Corp. v. Signet Bank*, 1997 U.S. Dist. LEXIS 21499, at \*28-29 (E.D. Va. May 12, 1997) (holding enforceable jury waiver provision located on 11th page of 13-page agreement, set off in its own paragraph in all capital letters and labeled "Waiver of Jury Trial"), *rev'd on other grounds*, 166 F.3d 614 (4th Cir. 1999). Here, Plaintiff's Waiver was far more conspicuous than in any of those cases – it is set apart from the rest of the Employment Agreement on its own page and clearly titled in bold capital typeface: "**JURY TRIAL WAIVER AGREEMENT**." Moreover, the Waiver provides in bold capital typeface at the bottom of the page that by signing the Waiver, Plaintiff is "**WAIVING [HIS/HER] RIGHT TO JURY TRIAL**."

Plaintiff's Waiver also clearly provided her with the opportunity to consult with an attorney of her choosing before signing it. Moreover, the Waiver states in two separate places (once in **bold**) that the waiving party could take "as much time as [she] want[ed]" to consider the Waiver. That Plaintiff had the opportunity to consult with an attorney prior to signing the Waiver demonstrates that she entered into the Agreement knowingly and voluntarily. *See Dunkin' Donuts*, 2008 WL 110474, at \*\*10-11 (summarizing cases finding that failure to seek counsel does not invalidate otherwise valid jury waivers). Furthermore, Plaintiff is herself a sophisticated businessperson. She not only has a Bachelor of Arts in International Affairs, but also a Masters of Business Administration. *See* Ex. 1-B, at 3. Accordingly, the Waiver is valid and enforceable.

14902932v.1

## II. PLAINTIFF'S ENFORCEABLE JURY WAIVER APPLIES TO ALL CLAIMS IN HER AMENDED COMPLAINT.

As a procedural matter, the Waiver applies to Plaintiff's claims against all Defendants for two reasons. First, the Waiver expressly applies to any claims under federal or state law that Plaintiff might assert against Allied and any of its "affiliates, subsidiaries, divisions, successors, assigns, purchasers, and/or its current, former, or future employees, shareholders, officers, directors and agents." As noted above, RSI and RSVA are both affiliates of Allied. Moreover, all of Plaintiff's claims arise out of and relate to her employment with Allied and RSVA. Second, all of the individual defendants are employees of RSVA, and, therefore, covered by the Waiver. Indeed, even if the Waiver had not expressly applied to the individual defendants, basic agency principles would extend the Waiver's terms to them as employees of the signatory employer. *See Tracinda Corp. v. Daimler Chrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007) (applying jury waiver to claims against individual defendants because "when a valid contractual jury trial waiver provision applies to a signatory corporation, the waiver also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation"). Accordingly, the Waiver that Plaintiff signed is valid and enforceable, and the Court should strike her demand for a jury trial under Federal Rule of Civil Procedure 39(a)(2).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court strike Plaintiff's demand for a jury trial.

14902932v.1

Dated: October 5, 2012							Respectfully submitted,

By:   /s/
   Virginia E. Robinson (VSB #71411)
   Raymond C. Baldwin (admitted pro hac vice)
   Attorneys for Defendants
   SEYFARTH SHAW LLP
   975 F Street, N.W.
   Washington, DC 20004
   Telephone:  (202) 463-2400
   Facsimile:  (202) 828-5393
   verobinson@seyfarth.com
   rbaldwin@seyfarth.com

   Mark G. Kisicki (admitted pro hac vice)
   Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
   2415 East Camelback Road, Suite 800
   Phoenix, AZ 85016
   Telephone: (602) 778-3700
   Facsimile:   (602) 778-3750
   mark.kisicki@odnss.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2012, I electronically filed the foregoing with the Clerk's Office using the CM/ECF system, which will send a notification of such filing to the following:

Elaine Charlson Bredehoft
ecb@cbcblaw.com
Carla D. Brown
cbrown@cbcblaw.com
CHARLSON BREDEHOFT COHEN BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
*Attorneys for Plaintiff*

/s/
Virginia E. Robinson
Virginia Bar No. 71411
*Attorney for Defendants*
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
(202) 463-2400
(202) 828-5393 (facsimile)
verobinson@seyfarth.com

14902932v.1