IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JENNIFER TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-cv-00523-GBL-IDD |
| ) | |
| REPUBLIC SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment on Count V of the Amended Complaint (Doc. 117) filed by Individual Defendants Jason Callaway, Ronald Krall, Douglas Murphy and Christopher Rains ("Defendants").

In this action, Plaintiff Jennifer Taylor seeks damages against her former employer and colleagues for wrongful termination of employment for opposing or resisting criminal conduct; tortious interference with business expectancy; gender discrimination; sexual harassment; hostile work environment; retaliation; and retaliatory discharge pursuant to Title VII of the Civil Rights Act of 1964. Defendants move for summary judgment on Count V of the Amended Complaint seeking damages for tortious interference with business expectancy. Specifically, Plaintiff alleges that she had a significant probability of continuing employment with her former employer, and but for Defendants' alleged actions she would have continued her employment. The issue before the Court is whether Plaintiff has established a *prima facie* claim for tortious interference with business expectancy against Defendants, her former colleagues.

The Court holds that Defendants are entitled to summary judgment because Plaintiff cannot establish a *prima facie* claim for tortious interference with business expectancy. She has

not demonstrated that Defendants were acting outside the scope of their employment or that they used illegal or independently tortious conduct which contributed to or otherwise led to her separation with her former employer.

## BACKGROUND

Plaintiff began her employment with Republic Services Waste Industries, Inc. ("Republic Services") as employee for Allied Waste Industries, Inc. ("Allied") in June 2007 (Doc. 1-4, ¶¶ 47, 65, 80). While at Allied, Plaintiff set her own work schedule, she did not punch a time clock, and came and went as she deemed appropriate (Doc. 118-2, p. 290). Following a merger between Allied and Republic Services of Virginia ("Republic"), Plaintiff relocated to Virginia to assume the position of Region Director of Municipal Services (Doc. 1-4, ¶ 77). At Republic, Plaintiff reported to a new management team – one with a very different management style than what she had been used to at Allied (Doc. 118-2, pp. 325-326). Plaintiff's new immediate supervisor was East Region Vice President of Sales, Doug Murphy ("Murphy"), who reported to East Region Senior Vice President, Ron Krall ("Krall") (Docs. 1-4, ¶ 80; 118-5, pp. 107-08, 110). Before the merger, both Murphy and Krall had been executives at Republic, not Allied, and, according to accounts from both male and female employees, were "micromanagers" who preferred legacy Republic over legacy Allied employees (Docs. 1-4, ¶ 86; 118-2, pp. 325-326).

Shortly after accepting her new job assignment, Plaintiff and Murphy clashed over many issues, including Plaintiff's job performance and Murphy's expectation that she spend less time "on the road" and more time physically working in the East Region Office (Docs. 1-4, ¶¶ 92, 97; 118-2, pp. 160-162; 153; 542-543). In June 2010, Chris Rains became East Region Vice President of Sales and, shortly after he began supervising Plaintiff, he also noticed issues with her performance (Doc. 118-5, pp. 98-99, 101, 120, 151, 168-69, 191, 198, 205-206). In February

2011, Rains communicated his concerns to Taylor in her annual review, where he rated her overall performance as not meeting expectations (Doc. 118-5, pp. 199-200).

In August 2011, Plaintiff contacted Catharine Ellingsen, Senior Vice President of Human Resources (previously the Company's Deputy General Counsel) and complained about Rains, Krall and some other managers (Doc. 118-2, pp. 124-128, 131-132). At the end of their discussion, Ellingsen proposed three options: (1) Plaintiff could stay in her job; (2) Plaintiff could transfer to some position outside the East Region; or (3) Plaintiff could exit the Company, with Ellingsen helping her to do so in a respectful way (Doc. 1-4, ¶ 158).

The facts surrounding Plaintiff's ultimate separation with Republic are in dispute. Nonetheless, Plaintiff alleges that based upon her performance and experience at Republic up until she complained about Rains, Krall, Calloway and Murphy, she had every reason to believe that she would remain employed by Republic (Doc. 1-4, ¶¶ 244-249). She contends that Rains, Murphy, Callaway and Krall acted outside of the scope of their employment and conspired to employ improper means to interfere with her business expectancy. *Id.*

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## ANALYSIS

Defendants Murphy, Rains, Krall and Calloway are entitled to summary judgment on Plaintiff's claims for tortious interference with business expectancy because (1) the claims against Defendant Murphy are time-barred and (2) Plaintiff cannot demonstrate that Defendants Rains, Krall and Calloway acted outside of the scope of their employment or used illegal or independently tortious conduct which contributed or otherwise led to her separation with Republic.

A. **Plaintiff's Compliance with Local Rule 56(b)**

Defendants contend that Plaintiff's Opposition does not comply with Local Rule 56(b) because "her opposition concedes every fact necessary to grant summary judgment because she does not provide any evidence to contest the statement of facts identified in Defendants' motion" (Doc. 148, p. 2).

Local Rule 56(b) provides in relevant part:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

While Plaintiff's opposition contains a section entitled "Statement of Material Facts Genuinely in Dispute," that section does not identify which of the material facts asserted by Defendants as undisputed were thought by Plaintiff to be in dispute. Nor did that section set out citations showing why there was dispute as to the facts that Defendants asserted to be undisputed. Instead, that section of Plaintiff's opposition consists of 20 pages of mixed factual assertions and argument. And, indeed, many of the factual assertions in that section were not in dispute but instead, were facts that Defendants asserted to be undisputed which Plaintiff merely recast in argumentative style. That approach, predictably, made it difficult and time-consuming to sort out what, if any, facts really were in dispute and whether any asserted dispute was genuine or related to material facts.

5

**B. Count V Fails as a Matter of Law**

In Virginia, a plaintiff must prove four elements in order to establish a claim for tortious interference: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *DurrettBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 706 (Va. 2009) (citing *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va.1985)). Where, as here, the contract at issue is an at-will employment contract, the plaintiff must also prove that the acts or methods used were "improper." *Storey v. Patient First Corp.*, 207 F.Supp.2d 431, 447 (E.D.Va. 2002) (citing *Maximus v. Lockheed Info. Management Sys. Co., Inc.*, 493 S.E.2d 375 (Va.1997)).

Generally, the alleged interferor cannot be a party to the business expectancy. *Beall v. Abbott Labs.*, 130 F.3d 614, 621 (4th Cir. 1997). Rather, a tortious interference claim requires the existence of three actors – two parties to the contract and a third party who interferes with, or induces one of the parties to breach the contract. *Storey*, 207 F.Supp.2d. at 448 (collecting cases). "However, if it can be shown that an agent of a party to the contract was acting outside of the scope of his employment in tortuously interfering with such contract, then the aggrieved party may be entitled to recover . . ." *Id.* (citing *Wuchenich v. Shenendoah Memorial Hospital*, No. 99-1273, 2000 WL 665633, at *17 (4th Cir. May 22, 2000)).

**A.     Murphy**

Plaintiff alleges that Murphy disliked her immediately and treated her different than other males who also worked in the office (Doc. 134 at pp. 24-25). She contends that Murphy "scrutinized her comings and goings and falsely accused her of lying about her whereabouts" and

"even attempted to PIP Ms. Taylor on multiple unsubstantiated bases." *Id.* Plaintiff's claims however, are time-barred. The applicable statute of limitations in a case for tortious interference with business expectancy is two years. Va. Code. Ann. 58.01-243(A). Plaintiff filed her Amended Complaint on April 20, 2012, therefore, the applicable statutory period is between April 20, 2010 and April 20, 2012. Murphy was replaced as Plaintiff's supervisor in June 2010, as a result, Plaintiff reported to Murphy for only 41 days within the statutory period.

In her opposition, Plaintiff does not point to a single act that Murphy allegedly engaged in during that 41-day time period. Instead, she broadly accuses Murphy of "disliking" her, scrutinizing her "comings and goings," questioning her whereabouts during working time and threatening to place her on a "Performance Improvement Plan." *See* Doc. 134 at p. 25. Plaintiff, however, cites to no evidence establishing that any of these alleged acts occurred during the relevant 41-day time period. Rather, she relies solely on evidence that establishes that many of these events may have occurred in 2009, outside of the statutory period. *Id.* at pp. 4-5. Consequently, Plaintiff's claim against Murphy is barred by the statute of limitations.

### B. Rains

Plaintiff's claim against Rains is based solely on her allegation that Rains tortiously interfered with her employment by copying Calloway on emails and allegedly fabricating performance issues (Doc. 134 at pp. 24-25). Viewing the allegations in the light most favorable to Plaintiff, the claim fails as a matter of law. Plaintiff has not demonstrated that Rains was acting outside the scope of his employment under Virginia law.

Generally, an act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest,

or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the employee to do the act upon his own account." *Newport News Industrial v. Dynamic Testing*, 130 F.Supp.2d 745, 750 (E.D. Va. 2001). Plaintiff testified that all of Rains's emails to her were work related (Doc. 118-2 at p. 134). She further admitted that she did not know if Rains knowingly participated in any retaliation. *Id.* at pp. 430-431. The fact that Rains copied Calloway on an email does not amount to illegal or independently tortious acts, and thus cannot support a claim for tortious interference. *See Lewis-Gale Medical Center, LLC v. Alldredge*, 710 S.E.2d 716, 721 (Va. 2011)(citing *Duggins v. Adams*, 360 S.E.2d 832, 836-37 (Va. 1987)). In *Duggins*, the Supreme Court of Virginia stated

> Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship....
>
> Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods.

*Duggins*, 360 S.E.2d at 227. "Improper means" do not include "actions motivated by spite, ill will and malice" toward plaintiff. *Dunn, McCormack & MacPherson v. Connolly*, 760 S.E.2d 867 (Va. 2011).

Additionally, Plaintiff has provided no evidence that Rains "fabricated" the performance issues leading to her separation from Republic. The fact that Plaintiff disagreed with Rains's appraisal of her work does not create a disputed issue of material fact sufficient to overcome a motion for summary judgment. Accordingly, Plaintiff's claim against Rains fails.

### C. Callaway

Plaintiff alleges that Calloway engaged in an intentional "campaign to falsely portray her as having performance issues," sought to "drive her out of Republic," and conspired to "engineer her dismissal" because she rejected his sexual advances and reported his conduct to a colleague in Human Resources (Doc. 134 at p. 24). Despite Defendants contentions, Plaintiff argues that Calloway remained very involved with her employment after 2009 by fabricating false performance issues that ultimately led to her separation with Republic. *Id.* at 22. Plaintiff, however, relies on portions of the record that provide little support for her claims. *See* Docs. 134 at p. 11; 138, Attach. 24 (8/25/11 email from Rains to Ellingsen and Krall regarding Plaintiff's performance issues. Calloway is copied on the email but provides no response); Attach. 25 (8/9/10 email from Calloway to Rains stating that he had been "hearing some rumblings about [Plaintiff's] timeliness and engagement"); Attach. 26 (8/10/10 email from Krall to Rains regarding Plaintiff's performance and whereabouts. Calloway is copied on the mail but provides no response); Attach. 27 (8/10/10 Calloway responds to the email referenced in Attach. 26. He states that the out-of-state interview Plaintiff attended in person could have been conducted by video).

While these documents clearly demonstrate that Calloway continued to observe Plaintiff's employment after Ellingsen's investigation in 2009, there is no evidence to support Plaintiff's allegation that Calloway falsely portrayed Plaintiff as having performance issues or that he was otherwise conspiring to "drive her out of Republic." Rather, these documents demonstrate that, as the Vice President of Human Resources for the Eastern Region, Calloway was aware of concerns about her work performance. There is no evidence to support an

inference that Calloway somehow orchestrated an elaborate conspiracy to "engineer" Plaintiff's separation from Republic.

Plaintiff further contends that Callaway is responsible for her not receiving a synergy bonus. While the evidence demonstrates that Callaway was involved in the synergy process, Plaintiff fails to demonstrate a genuine issue of material fact as to whether Callaway was involved in determining whether Plaintiff was eligible for a synergy bonus (Doc. 118-2, pp. 25, 31, 33, 37). Furthermore, each of the alleged acts Plaintiff relies upon in support of her claim for tortious inference falls squarely within the scope of Callaway's employment and does not constitute an illegal or independently tortious act. Plaintiff's claim against Calloway, therefore, fails.

### D. Krall

Plaintiff alleges that Krall acted outside the scope of his employment "in denying [Plaintiff] a synergy bonus, fabricating performance criticisms of her, and in attempting to drive her out of Republic" (Doc. 134 at p. 23). In support, Plaintiff points to email messages from Krall asking about her whereabouts, requiring her to use a travel calendar to track her work-related travel, and the fact that he asked an assistant to check on her (Doc. 118-2, pp. 467-468). Further, Plaintiff points to one email she believes was retaliatory in nature, because Callaway was copied on the email.

Assuming Plaintiff's allegations are true, her claim fails as a matter of law. Plaintiff has pointed to no evidence to indicate that Krall acted outside of the scope of his employment or used improper methods to cause Plaintiff's separation from Republic. Krall's email messages to Plaintiff regarding her work travel and her whereabouts were work-related and within the scope of Krall's employment. Moreover, the evidence shows that Krall's email messages were

10

consistent with his treatment of other employees. Plaintiff, herself, testified that all employees within the region were required to use the travel calendar, and that Krall sent an email message to everyone reminding them to use it (Doc. 118, pp. 8, 16).

Furthermore, Plaintiff's claims that Krall often made condescending comments about her bid review by questioning the field's "proper pricing and research they had done on a bid," such comments are clearly work-related and within the scope of Krall's position as Senior Vice-President of Eastern Operations. Plaintiff has not pointed to any evidence that these alleged comments adversely affected her employment or interfered with her business expectancy. Additionally, Plaintiff has no evidence that Krall chose not to give her a synergy bonus. Even if there were evidence of such, "[a] decision by an employer and supervisors involving an employee's work is not the type of 'interference' made actionable under this tort." *Douglas v. Dabney S. Lancaster Community College*, 990 F.Supp. 447, 467 (4th Cir. 1997); *see also Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 322 (4th Cir. 2012) (a claim for tortious interference with business expectancy "provides redress for acts akin to violence, threats or intimidation, bribery, [or] unfounded litigation, not the ordinary interpersonal conflicts of the workplace."). Thus, Plaintiff's claim against Krall fails.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's claims for tortious interference with business expectancy alleged in Count V of the Amended Complaint (Doc. 117) because Plaintiff cannot establish *a prima facie* claim for tortious interference against Defendants Jason Callaway, Ronald Krall, Douglas Murphy and Christopher Rains. Plaintiff has not demonstrated that Defendants Callaway, Krall or Rains acted outside the scope of their employment or used illegal or independently tortious conduct which contributed or otherwise

lead to her separation with Republic. Furthermore, Plaintiff's claims against Defendant Murphy are time-barred.

**IT IS SO ORDERED.**

ENTERED this 28th day of January 2013.

Alexandria, Virginia
1 / 28 / 2013

                                                          /s/
                                        Gerald Bruce Lee
                                        United States District Judge