IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| JENNIFER TAYLOR, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 12-cv-00523-GBL-IDD |
| REPUBLIC SERVICES, INC., et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Republic Services, Inc. and Republic Services of Virginia, LLC's ("Defendants") Motion for Summary Judgment on Count I and Partial Summary Judgment on Count II of the Amended Complaint (Doc. 120).

This is an employment discrimination action where Plaintiff Jennifer Taylor ("Plaintiff") has asserted claims against her former employer and co-workers for wrongful termination; tortious interference with business expectancy; gender discrimination; sexual harassment; hostile work environment; retaliation; and retaliatory discharge pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff claims that one of her former supervisors made unwelcome sexual advances toward her, used his position to color her supervisors' evaluations of her work, and orchestrated her separation of employment. Defendants move for summary judgment on Count I of the Amended Complaint seeking damages for gender discrimination and partial summary judgment on Count II with respect to Plaintiff's claims for retaliation, other than retaliatory discharge. The issues before the Court are whether genuine issues of material fact exist as to Plaintiff's claims for gender discrimination and retaliation.

The Court holds that Defendants are entitled to summary judgment because Plaintiff fails to establish a *prima facie* claim for gender discrimination, and she has not set forth direct or circumstantial evidence that raises a genuine issue of material fact as to whether gender was a motivating factor affecting her separation of employment. Additionally, no genuine issue of material fact exists as to Plaintiff's retaliation claims based on the following issues: (1) denial of a synergy bonus; (2) Keith Cordesman's alleged comment; (3) Chistopher Rains's August 15, 2011 email; (4) Daniel Jameson's August 3, 2011 email; and (5) associational retaliation.

## BACKGROUND

Plaintiff contends that she was subject to systematic gender discrimination and unwelcome sexual harassment by her former employer and co-workers for four years, which ultimately led to her separation of employment on September 23, 2011 (Doc. 1-4). For the purpose of clarity, the Court will focus only on those allegations, which Plaintiff alleges are encompassed within her claims for gender discrimination (Count I) and retaliation (Count II) in the Amended Complaint.

Plaintiff began her employment with Republic Waste Services, Inc. ("Republic Services"), as the Director of Infrastructure Development for Allied Waste Industries, Inc. ("Allied") in June 2007 (Doc. 1-4, ¶¶ 47, 65, 80). Plaintiff alleges that Jason Callaway ("Callaway"), then Vice-President of Human Resources at Allied, harassed her and made unwelcome sexual advances toward her on two occasions. The first instance occurred following a work related dinner in May 2008. Callaway showed up at Plaintiff's home unannounced in the middle of the night (Doc. 121-2, pp. 205-06, 216-17, 220-21, 224-25, 227-30, 233-36, 238-39, 242-43). Earlier in the evening, Plaintiff and Callaway had spoken about the renovations she had recently made to her home. *Id.* at pp. 192-195. Callaway expressed an interest in seeing the

2

renovations, and Plaintiff invited him to "come by anytime." *Id.* at pp. 194-195. Plaintiff was taken aback when Callaway showed up at her home at 11:30 p.m. that evening, asking for a brief tour of her home. *Id.* at pp. 220-221. She invited Calloway inter her home. *Id.* The two exchanged small talk, and she poured him a drink. *Id.* at 228-29. At Callaway's suggestion, Plaintiff poured herself a drink. *Id.* at 230. Later, Callaway asked to see the upstairs level of her home. *Id.* at pp. 227-38. Plaintiff interpreted Callaway's request to "go upstairs" as a solicitation for sex. *Id.* at pp. 242-43. She said "no" and asked Callaway to leave. *Id.* at p. 243. Callaway left without incident. *Id.* at p. 239. Plaintiff acknowledges that Callaway did not touch her or make any comments she found to be inappropriate, aside from asking to see the upstairs level of her home. *Id.* at pp. 242-43.

The second incident occurred on August 14, 2009. Plaintiff alleges that Callaway entered her office and suggested that they "step down the hall to have sex in an empty office (Doc. 1-4, ¶ 11). Plaintiff rebuffed Callaway's advance. *Id.* at ¶¶ 111-112.

Following a merger between Allied and Republic Services of Virginia ("Republic") in December 2008, Plaintiff assumed the position of Region Director of Municipal Services (Doc. 1-4, ¶ 77). At Republic, Plaintiff reported to a new management team – one with a very different management style than what she had been used to at Allied (Doc. 121-2, pp. 325-326). Plaintiff's new immediate supervisor was East Region Vice President of Sales, Douglas Murphy ("Murphy"), who reported to East Region Senior Vice President, Ronald Krall ("Krall") (Docs. 1-4, ¶ 80; 121-5, pp. 107-08, 110). Before the merger, both Murphy and Krall had been executives at Republic, not Allied, and, according to accounts from both male and female employees, were "micromanagers" who preferred legacy Republic over legacy Allied employees (Docs. 1-4, ¶ 86; 121-2, pp. 325-326).

3

According to Plaintiff, Murphy immediately began subjecting her to unwarranted scrutiny that other male directors were not subjected to regarding time, attendance and business travel (Doc. 1-4, ¶ 82). Murphy tracked Plaintiff's time in the office to the minute; provided no guidance on work-related projects; told Plaintiff that "nobody cared what she thought" whenever she offered an opinion or suggestion; and treated Plaintiff like an entry-level employee. *Id.* at ¶¶ 83, 86, 89. On April 28 2009, Plaintiff reported Murphy's hostile behavior to Callaway, in his capacity as Regional Vice President of Human Resources. *Id.* at ¶¶ 90-91.

Plaintiff contends that Krall, the East Region Senior Vice President, began harassing her in an attempt to undermine her authority and fabricate performance issues (Doc. 1-4, ¶¶ 92-95). Krall questioned the value of Plaintiff's presence at every out-of-town meeting she attended, as well as meetings she had with her regional counterparts and dotted-line supervisors. *Id.* Plaintiff also claims that Krall made condescending remarks about her on nearly every bid review call. *Id.* at ¶ 99.

In June 2009, Murphy prepared a Performance Improvement Plan ("PIP") for Plaintiff because he was concerned about her timeliness, accuracy and communications regarding her whereabouts (Doc. 132-11). After speaking with Plaintiff and Calloway, Murphy changed his mind about placing Plaintiff on a PIP, concluding that the real issue was communication, which he attributed to the different corporate cultures merging together (Doc. 121-11, p. 149). Murphy provided the assessment for Plaintiff's 2009 performance evaluation (Doc. 118-30). He noted Plaintiff's overall rating as "meeting expectations," commenting that she exceeded expectations in some areas and needed improvement in other areas. *Id.*

In June 2010, Christopher Rains ("Rains") became the Vice President of Sales for the East Region and Plaintiff's immediate supervisor (Doc. 121-6, p. 80). Plaintiff and Rains

worked closely together on the municipal bid review process. *Id.* at p. 113. Rains found that Plaintiff's strengths lied in her strong knowledge of government affairs and the ability to make group presentations. *Id.* at p. 140. Rains, however, noted that Plaintiff demonstrated weaknesses in the following areas: she failed to meet deadlines; she struggled with keeping her priorities straight; she had poor organizational skills; she failed to regularly follow up; she had difficulty applying the training she received; and she grappled with getting the organization to "buy in" to their customer relationship management tool. *Id.* at pp. 98-99, 101, 120, 168-69, 191, 198, 205-06; 118-7. Rains documented these concerns on Plaintiff's 2010 performance evaluation, and gave her an overall rating of "needs improvement" (Doc. 121-32).

Plaintiff contends that Callaway, Murphy, and Krall severely damaged her reputation within Republic. As further evidence of discrimination, Plaintiff proclaims that she: (1) was denied a synergy bonus in 2010, even though similarly-situated male directors in other regions received bonuses; (2) received a false performance evaluation in 2011; (3) was subject to taunts from her supervisor and colleagues; and (4) was subjected to continuous monitoring by an executive assistant on Krall's orders (Doc. 1-4, ¶¶ 125-126, 128, 131-132, 134-139). Plaintiff maintains that she complained to several members of Republic's management team regarding her treatment, which resulted in her being targeted for further discrimination (Doc. 131, p. 5). The facts surrounding Plaintiff's ultimate separation of employment are in dispute. Nevertheless, Plaintiff maintains that following her separation, Republic further retaliated against her by canceling contracts with Plaintiff's husband's employer, who was a vendor for Republic (Doc. 1-4, ¶ 190).

Defendants move for summary judgment on Plaintiff's discrimination claims alleged in Count I (Gender Discrimination, Sexual Harassment and Hostile Work Environment in Violation

5

of Title VII) and partial summary judgment as to any claims of retaliation, other than retaliatory discharge, alleged in Count II (Retaliation, Retaliatory Discharge and Hostile Work Environment in violation of Title VII) of the Amended Complaint.

Defendants have summarized Plaintiff's retaliation claims as follows: (1) she did not get a "synergy" bonus because she did not "succumb" to Callaway's alleged advances in May 2008 and June/July 2009; (2) she was called a "fucking bitch" in February 2011 by Keith Cordesman; (3) Christopher Rains sent Plaintiff a "harsh" email "blast[ing] her" for a conversation she had with another manager about reporting structures; (4) Daniel Jameson sent her a harsh email about a recycling program, which she described as "not showing professionalism" or "leadership"; and (5) associational retaliation by Republic against the company that her husband worked for (Doc. 121, p. 20). Defendants contend that each of these claims fail (Doc. 121, p. 20-24).

Defendants further argue that Plaintiff's sexual discrimination claim fails as a matter of law because (1) there is no evidence that Plaintiff was adequately performing her job when she was given less than stellar performance ratings six months before her employment ended, (2) Plaintiff has failed to identify a similarly situated comparator, and (3) there is no evidence that she suffered an adverse employment action (Doc. 121, p. 26-29).

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a

genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## ANALYSIS

### I. Count I – Gender Discrimination

Defendants are entitled to summary judgment on Plaintiff's claim for gender discrimination because Plaintiff fails to establish a *prima facie* claim for gender discrimination, and she has not set forth direct or circumstantial evidence that raises a genuine issue of material fact as to whether gender was a motivating factor affecting her separation of employment.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of gender. *See* 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case for gender discrimination under Title VII, a plaintiff must show that (1) she is a membership of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) similarly-situated employees outside of her class received more favorable treatment. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

A plaintiff may defeat a motion for summary judgment and establish a successful Title VII claim through two alternative methods of proof. A plaintiff may allege a claim of gender discrimination under either the "burden-shifting" scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807, (1973) or the "mixed-motive" framework. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284–85 (4th Cir.2004).

Under the *McDonnell Douglas* scheme, a plaintiff first bears the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory justification for its action. *Id.* If the employer carries its burden, the plaintiff must show that the employer's legitimate, nondiscriminatory reason is merely a pretext for discrimination. *Id.*

Under the mixed-motive approach, plaintiff must sufficiently plead, through direct or circumstantial evidence, that her gender "was a motivating factor" in his employer's decision to terminate him. *Hill*, 354 F.3d at 284–86. Direct evidence is defined as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir.2006) (internal quotations omitted). "To demonstrate such an intent to discriminate on the

part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait . . . actually motivated the employers' decision." *Hill*, 354 F.3d at 286. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 144 (2000). Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, a plaintiff must then be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Burdine*, 450 U.S. at 253).

Regardless of the type of evidence offered by a plaintiff as support for her discrimination claim, or whether she proceeds under a mixed-motive or single-motive theory, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Hill*, 354 F.3d at 286 (quoting *Reeves*, 530 U.S. at 141).

In this case, Plaintiff claims that Republic discriminated against her in a number of ways: she was subjected to undue scrutiny, treated in a condescending manner, subjected to fabricated criticisms of her work, given unfavorable evaluations and placed upon restricted travel (Doc. 1-4, ¶ 196-7). While Plaintiff has sufficiently established that she is in a member of a protected class, she has failed satisfy the second, third and fourth requirements.

First, Plaintiff is unable to dispute the evidence that she received a "needs improvement" rating on her 2010 performance evaluation six months prior to her separation of employment (Doc. 118-32). *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (plaintiff could

9

not make a *prima facie* showing where performance evaluation stated he was "below target"). Plaintiff's self-serving evaluation of her performance "cannot create a genuine issue of material fact." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). It is Republic's perception of Plaintiff's performance that matter, not Plaintiff's. *See Kings v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (holding that the plaintiff's self-assessment is irrelevant); *Hawkins*, 203 F.3d at 277 (same).

Second, Plaintiff has not demonstrated that she suffered an adverse employment action because of her gender. "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). None of the alleged incidents rises to the level of an adverse employment action. Plaintiff's assertions that Murphy and Krall subjected her to "undue scrutiny," fabricated performance criticisms, provided false negative evaluations, undermined her authority and restricted her travel do not constitute adverse employment actions. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (holding that disciplinary discussions that did not result in lost pay or position failed to state a prima facie claim of discrimination, even if different than other employees); *Smith v. Sec'y of Army*, No. 1:11cv724, 2012 WL 3866487, *2 (E.D.Va. Sep. 5, 2012) (alleged disrespectful conduct not an adverse employment action); *Dawson v. Rumsfeld*, No. 1:05cv1270, 2006 WL 325867, *6 (E.D.Va. Feb. 8, 2006) ("Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is therefore not an adverse employment action."). Plaintiff did not suffer any loss of pay, benefits, or other tangible detriment as a result of Republic's actions.

Furthermore, Plaintiff testified that she consistently did a good job, met her employer's expectations, and did not have job performance issues (Doc. 118-2, pp. 634, 638, 649-50, 570-73). Therefore, she cannot show that she experienced any conduct that had a "material effect on the terms, conditions, or privileges of her employment." *Stephens v. Gutierrez*, Case No. 1:08-cv-870, 2010 WL 1005189, *8 (E.D.Va. March 15, 2010).

Third, Plaintiff has not identified a similarly situated employee outside her class that was treated more favorably. For her *prima facie* showing, Plaintiff must identify a similarly situated comparator, which means, a male employee who is similar in all "relevant respects." *Haywood v. Locke*, 387 Fed. App'x 355, 2010 WL 271129, at *3 (4th Cir. 2010) (internal citations omitted). An employee is similar in all "relevant respects" if he "dealt with the same supervisor, was subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* Plaintiff, however, has not identified any male employee who meets this standard set by the Fourth Circuit. Rather, Plaintiff alludes to "all of her identified colleagues and co-workers under Mr. Krall's supervision were males." (Doc. 131). These "identified colleagues" that Plaintiff references are other Regional Municipal Marketing Directors, all of whom worked in different Regions, for different supervisors, and under different standards. *Forrest v. Transit Mgmnt. of Charlotte, Inc.*, 245 Fed. App'x 255, 257 (4th Cir. 2007) (if different decision-makers are involved, employees are generally not similarly situated).

Even if Plaintiff could establish a *prima facie* case for gender discrimination, she has presented no circumstantial evidence that gender was a motivating factor for her separation of employment. The undisputed facts demonstrate that shortly after joining Republic, Plaintiff clashed with Murphy and Krall over many things, including the way they "micromanaged"

directors in the East Region, her job performance, and Murphy's expectation that she spend more time in the office than on the road (Docs. 121-2, pp. 160-63, 467; 121-4, p. 15). When Rains began supervising Plaintiff in February 2011, he also noticed issues with her performance which led a "needs improvement" rating on her 2010 performance evaluation six months prior to her separation from Republic (Doc. 121-32). Based upon the following, it is quite clear that Republic was dissatisfied with Plaintiff's work performance. Plaintiff has pointed to no evidence that she was subjected to undue scrutiny, treated in a condescending manner, subjected to fabricated criticisms of her work, given unfavorable evaluations and placed upon restricted travel because of her gender. *See Holland*, 487 F.3d at 217 (plaintiff's Title VII claim failed where employee could not establish pretext on the part of the decision maker). The Fourth Circuit has stated, "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Hawkins*, 203 F.3d at 278 (4th Cir. 2000) (quoting *DeJarnette v. Cornin Inc.*, 133 F.3d g 293,299 (4th Cir.1998)). A Court should not second-guess an employer's appraisal. *Id.* at 280. Rather, the Court's sole concern should be "whether the reason for which the defendant discharged the plaintiff was discriminatory." *Id.* (quoting *DeJarnette*, 133 F.3d at 299). Plaintiff has not set forth any evidence demonstrating genuine issues of material fact as to whether she was subjected to intentional discrimination based on her gender or that her negative performance evaluation was pretext for gender discrimination. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's claim for gender discrimination in Count I.

## II.  Count II – Retaliation

Defendants are entitled to partial summary judgment on Plaintiff's claims for retaliation within Count II of the Amended Complaint because Plaintiff cannot establish a *prima facie* case for retaliation based on the following issues: (1) denial of a synergy bonus; (2) Keith Cordesman's alleged comment; (3) Christopher Rains's August 15, 2011 email; (4) Daniel Jameson's August 3, 2011 email; and (5) associational retaliation.

To establish a *prima facie* case for retaliation, the plaintiff must prove three separate elements: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). Like a discrimination claim, if the plaintiff is able to make out a *prima facie* claim, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Hawkins*, 203 F.3d at 278. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate a genuine issue of material fact that the employer's reason is a pretext for retaliation. *Id.*

### A.  Synergy Bonus

Plaintiff claims that she did not receive a synergy bonus in 2010 because she did not "succumb" to Callaway's alleged advance at her home in May 2008 (Doc. 121-2, p. 31). Discrimination claims under Title VII must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). Here, Plaintiff filed her EEOC charge on September 9, 2011 (Doc. 133-20). Thus, Plaintiff's claims based upon alleged discriminatory acts occurring prior to November 13, 2010 are time-barred and not properly before this Court. *See, e.g., Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir.1997) ("[i]ncidents outside the statutory window are time-barred"). Contrary to Plaintiff's contention

that her claim is timely because the synergy bonuses were not paid out until 2012, Plaintiff testified that she knew in April 2010 that she would not be receiving a synergy bonus (Doc. 121-2, p. 24). *See Dogaleva v. Virginia Beach Cty Pub. Sch.*, 364 Fed. Appx. 820, 824 (4th Cir. 2010) (Title VII claim accrues when the plaintiff is informed of the alleged adverse action); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428-29 (4th Cir. 2004) (failure to promote claim accrues when employer made decision).

Even if Plaintiff's claim was not time-barred, she has alleged no facts that would support a causal connection between Callaway's visit and Republic's decision not to include her position as one that was eligible to receive a synergy bonus. The record demonstrates that neither Callaway nor Krall had any role in determining whether Plaintiff would be eligible to receive a synergy bonus, rather, that decision was made by Republic's corporate office (Docs. 121-5, p. 63; 121-10, pp. 32-33, 57-58, 61-62, 250-51; 121-11, pp. 242, 246-47). In fact, Plaintiff acknowledged that the sole basis for this claim is her belief that Callaway had some role in making that decision because some unidentified employees who received synergy bonuses said that they received a letter from human resources (Doc. 121-2, pp. 31, 33, 37). She then admitted that she had no facts demonstrating that Callaway was involved in any way regarding the synergy bonus. *Id.* at p. 37. Plaintiff's mere speculation and assumptions cannot create a genuine issue of material fact sufficient to survive summary judgment. *See Cottom v. Town of Seven Devils*, 30 Fed. Appx. 230, 234 (4th Cir. 2002) (statements based solely on information and belief do not satisfy the requirements of Rule 56). Accordingly, Plaintiff's retaliation claim based on the denial of a synergy bonus fails.

### B. Keith Cordesman's Alleged Comment

Plaintiff contends that Republic Manager, Keith Cordesman, called her a "fucking bitch" in February 2011 during a bean-bag toss game at General Managers' conference in Phoenix, Arizona (Docs. 1-4, ¶¶ 145-47; 121-2, pp. 589-90). She claims that she overheard the comment when Cordesman was talking with a group of people not involved in the game approximately 20-25 feet away from her across the field. *Id.* In her Opposition, Plaintiff concedes that Cordesman's comment does not support an independent claim for retaliation (Doc. 131, p. 26). Rather, the alleged comment relates to her retaliatory discharge and hostile work environment claims. *Id.* Thus, Plaintiff has presented no evidence to defeat Republic's motion for summary judgment on this claim.

### C. Christopher Rains's August 15, 2011 Email

Plaintiff's claims that Rains retaliated against her by sending her an email that criticized her for making comments to other managers about his plan to change reporting structures for certain employees (Doc. 121-27). She alleges that this email constitutes retaliation or "Mr. Rains' animus toward her" because Rains "was aware there was an issue between Jason Callaway and [Plaintiff]" (Doc. 131, p. 23). Incohate "animus," however, especially when expressed in one hardly critical email is insufficient to support a claim for retaliation. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (an act of retaliation must be "materially adverse" to be actionable, which means that it must have been sufficiently severe to dissuade an objectively reasonable worker from making or supporting a charge of discrimination).

Even if Rains's email constituted an adverse employment action, Plaintiff has cited no evidence that Rains knew that Plaintiff had engaged in protected activity with respect to her interactions with Callaway. "To satisfy the third element, the employer must have taken the

adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Here, it is undisputed that Rains was unaware of any protected activity (Doc. 121 at pp. 18-19). Further, Plaintiff testified that she does not know whether Rains was a "willing participant" or "knowingly" engaged in any alleged retaliation (Doc. 121-2, pp. 430-31). Thus, Plaintiff cannot establish that Rain's 2011 email constitutes an act of retaliation.

### D. Daniel Jameson's August 3, 2011 Email

Plaintiff claims that a work-related email from Daniel Jameson, her functional supervisor, challenging her to take ownership of a company program was retaliatory in nature (Doc. 121-2, pp. 164-165, 186). However, in her Opposition to Republic's motion, Plaintiff explains that Jameson's email supports her claim for hostile work environment (Doc. 131, pp. 23-24). Therefore, Plaintiff has failed to present any evidence to defeat Republic's Motion for Summary Judgment on this claim.

### E. Associational Retaliation Claim

Plaintiff has asserted an associational retaliation claim against Republic for "canceling business deals with her husband's company and, ultimately, driving him out of the company" (Doc. 1-4, p. 11). In October 2011, Plaintiff married Steven Stradtman who was, at the time, the CEO and President of Otto (Doc. 121-26 at ¶ 46). Otto was one of Republic's "Preferred Vendors" for carts and recycle bins. *Id.* at ¶¶ 24-25, 62. Plaintiff proclaims that she has exhausted her administrative remedies, as it "reasonably inferred from the pleadings that the covered conduct in the E.E.O.C. Charge is the same illegal behaviors giving rise to Ms. Taylor's Title VII claims" (Doc. 131, p. 25). Plaintiff also maintains that, at the hearing on Defendants'

Motion to Dismiss on August 17, 2012, this Court held that she has exhausted her administrative remedies as to her associational retaliation claim. The Court disagrees.

First, the issue of whether Plaintiff exhausted her administrative remedies regarding her associational retaliation claim was not before the Court at the August 17, 2012 hearing on Defendants' Motion to Dismiss. In their Motion to Dismiss, Defendants argued that Plaintiff's Amended Complaint did not specifically identify the claims alleged in her Charge, and therefore, she had not exhausted her administrative remedies (Doc. 3). Defendants did not argue that the associational retaliation claim, in particular, was barred by Plaintiff's failure to exhaust. *Id.* Furthermore, at oral argument, Plaintiff's counsel did not address and was not asked about cancellation of contracts with Otto or exhaustion of an associational retaliation claim. Therefore, this Court's August 17, 2012 ruling did not resolve the issue of whether Plaintiff had exhausted her associational retaliation claim.

While Plaintiff's claim for associational retaliation may, arguably, be reasonably related to the conduct described in her EEOC charge, *see Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 303-04 (4th Cir. 2009) (allegations of post-charge retaliation (continued harassment and discharge) in complaint were related to charge because the charge alleged "continuing" retaliation in connection with the terms and conditions of plaintiff's employment), her claim nonetheless fails. Plaintiff cannot assert a retaliation claim based on Republic's alleged business dealings with her husband's employer. *See Thompson v. North American Stainless*, 131 S.Ct. 863 (2011). In *Thompson*, the Supreme Court held that an employee was entitled to bring a Title VII retaliation claim based upon retaliation suffered in response to the "protected activity" of a co-worker, who was the plaintiff's fiancé. *Id.* at 867-68. The Supreme Court held that the plaintiff was a "person aggrieved" within the meaning of Title VII because he was employed by

the same employer as the original EEOC claimant and injuring him was the employer's intended means of harming the claimant. *Id.* In the Court's phrase, plaintiff was within the "zone of interests" sought to be protected by Title VII. *Id.*

Under the "zone of interest" test articulated in *Thompson*, neither Plaintiff's husband's nor his employer's interests are not those interests "sought to be protected by the statutory provision" as Otto is not a "person aggrieved" within the meaning of the statute. *Id.* at 869-70. Title VII provides:

> It shall be an unlawful employment practice for an employer—
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(2). The statute further provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice, made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Although Plaintiff's husband was the CEO of a company that served as a preferred vendor to Republic, neither he nor Otto was not an employee of Republic, and therefore, do not fall within the zone of interests sought to be protected by Title VII. Accordingly, Plaintiff's assertion of a claim for associational retaliation falls beyond the outer limits recognized by the by the Supreme Court in *Thompson*.

18

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment as to Count I of the Amended Complaint seeking damages for gender discrimination and partial summary judgment on Count II with respect to Plaintiff's claims for retaliation, other than retaliatory discharge (Doc. 120). Plaintiff has failed to establish a *prima facie* case for gender discrimination, and has not set forth any direct or circumstantial evidence creating a genuine issue of material fact as to whether gender was a motivating factor affecting her separation of employment. Therefore, Defendants are granted judgment as a matter of law on Plaintiff's claim for gender discrimination in Count I of the Amended Complaint.

Additionally, Plaintiff has failed to demonstrate establish a *prima facie* case of retaliation based on the following claims: (1) denial of a synergy bonus; (2) Keith Cordesman's alleged comment; (3) Christopher Rains's August 15, 2011 email; (4) Daniel Jameson's August 3, 2011 email; and (5) associational retaliation. Consequently, no genuine issue of material fact exists as to these claims. Accordingly, Defendants are granted judgment as a matter of law on the aforementioned claims of retaliation in Count II of the Amended Complaint.

**IT IS SO ORDERED.**

ENTERED this 6th day of February 2013.

Alexandria, Virginia
2 / 6 / 2013

/s/
Gerald Bruce Lee
United States District Judge