**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JENNIFER J. TAYLOR<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC SERVICES, INC., *et al.*<br><br>Defendants. | CA No. 1:12cv523<br>(GBL/IDD) |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S LIMITED MOTION TO RECONSIDER**
**THE RELATIONSHIP BETWEEN REPUBLIC SERVICES, INC.**
**AND REPUBLIC SERVICES OF VIRGINIA, LLC WITH RESPECT**
**TO THE NUMBER OF EMPLOYEES AND CLARIFY WHETHER**
**PLAINTIFF HAS BEEN AWARDED PRE-JUDGMENT INTEREST**

Plaintiff, Jennifer Taylor ("Ms. Taylor"), by counsel, hereby moves this Court pursuant to Federal Rule of Civil Procedure 54(b), for reconsideration of its September 16, 2013 Memorandum Opinion awarding Ms. Taylor $50,000 in compensatory damages and no pre-judgment interest.

## SUMMARY OF ARGUMENT

Plaintiff requests the Court reconsider its finding that her maximum emotional distress damages be capped at $50,000 as the evidence offered at trial establishes that Republic Services, Inc. employs 7,000 to 8,000 employees in each of its four regions, and that each of the regions is a "business unit" *within* Republic Services, Inc.'s corporate structure.

Ms. Taylor further seeks clarification from the Court as to whether she is entitled to prejudgment interest at the statutory rate, and requests the Court consider the award.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) allows for reconsideration of orders and decisions during litigation. It provides in relevant part:

> [A]ny order or other decision, however, designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The power to grant relief under Fed. R. Civ. Proc. 54(b) "is committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) *citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L Ed. 2d 765 (1983). The Fourth Circuit has made clear the standards governing reconsideration of final judgments under Rules 59(e) and 60(b) and while these factors are not determinative of a Rule 54(b) motion, *Am. Canoe Ass'n*, 326 F.3d at 514-15, courts have considered these factors in guiding their discretion under 54(b). *McAfee v. Boczar*, 2012 U.S. Dist. LEXIS 90216 (E.D. Va. June 28, 2012). Therefore, motions for reconsideration generally should be limited to instances where "[T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension…." *Above the Belt Inc. v. Mel. Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)(Emphasis added); *accord United States v. Smithfield Foods, Inc.,* 969 F. Supp. 975, 977 (E.D. Va. 1997); *see Tully v. Tolley*, 63 F. App'x 108, 113 (4th Cir. 2003).

Reconsideration is also appropriate when the prior decision "would work manifest injustice."' *Am. Canoe Ass'n* at 515 (*quoting Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)).

## ARGUMENT

Jennifer Taylor proffered evidence at trial regarding the 7,000 to 8,000 individuals employed in Republic's internal "business units." Given this, the applicable cap for her emotional distress damages is $300,000 (instead of $50,000). Ms. Taylor further requests the Court consider an award to her of outstanding pre-judgment interest.

### I. JENNIFER TAYLOR PRESENTED EVIDENCE THAT REPUBLIC HAS 7,000-8,000 EMPLOYEES IN EACH OF ITS FOUR "BUSINESS UNITS"

During the trial, Republic's Senior Vice President of its entire operation testified regarding the number of employees in each of Republic's four "business units," otherwise known as "Regions." The East Region is comprised of many different states and markets.[1] The only testimony adduced at trial underscores that Republic's East Region was not a separate entity.

#### 1. Catharine Ellingsen Testified that Republic's Regions were "Business Units" *Within* the Republic Corporate Structure

Catharine Ellingsen testified that Republic's Regions operate as "business units" within Republic Services, Inc. and that each "business unit" had several thousand employees. Ms. Ellingsen testified that the Republic had a matrixed reporting structure, where certain positions in the region reported into various levels of Republic Services, Inc.'s "operational management."

Q. There's been discussion and you just mentioned the merger between Republic and Allied. Can you describe for the Court what the corporate structure of the company is since that merger occurred.
A. Since the merger?
Q. Correct.
A. So, Allied waste and Republic Services merged on December 5th of 2008. And, from that time until the fall of 2012, the way the company was structured was the company operates in 40 states across the country, plus Puerto Rico, and **the business is comprised of four separate regional business operating units which we call**

[1] As the East Region Director, Ms. Taylor managed projects and employees in numerous states through the East Region, including Virginia, North Carolina, Ohio, New Jersey, New York, Maryland, West Virginia, et al. *See* **Att. 1,** Plaintiff's Trial Testimony of 5/6/13 at 44:19-25

> ***our* regions.** Each region is -- at the time was about a two and a half to $3 billion region. And each region was headed by a senior vice-president of operations who essentially functioned as the CEO of that region because our regions are equivalent to large companies. Within the regions, each region had a number of areas, and those areas -- areas were run by area presidents. Within the areas, there were business units or divisions, and those business units are run by general managers, what we call general managers, and so that's the opt, kind of the line management group at each of those levels. General manager, area president, and S VP of the region, they're the ones that have the P N L responsibility, the financial responsibility for the region. **And, then to support that line management, we have what we call a matrix structure which means that we provide functional experts at all levels to those opt folks and so controllers and marketing folks and human resources, engineers, safety personnel and so those are *all the functional folks and the functional reports are dotted line reports into the various levels of operation management*.**
>
> Q. Can you explain what level of corporate control there is over each of those regions with respect to operations?
>
> A. Our company historically has been very operationally decentralized so we give each of those four SVPs, four business units in the region, a lot of autonomy to run their businesses how they see fit. Each region has slightly different business conditions, different business issues and so, we allow our senior vice-president to run the regions in the most effective manner in the way they feel is most effective. However, we do have certain corporate standards and corporate policies that we expect everyone to adhere to. And so, they -- the regions can run their businesses how they see fit to the extent that they don't do anything that's contrary to those corporate standards and policies

**Att. 2**, Trial Trans., Testimony of Catharine Ellingsen, 5/14/13, Part I, at 17:18-19:18 (emphasis added).

Essentially, Ms. Ellingsen's testimony regarding the corporate matrix of Republic further underscores that Republic Services, Inc. operated as one entity – albeit in different Regions.

Further underscoring that each Region of Republic was an intertwined part of the Company, Ms. Taylor's work was supervised and controlled by employees of Republic Services, Inc., including her immediate and dotted-line supervisors, Chris Rains, Daniel Jameson, and Ronald Krall. *See* **Att. 3,** Pl. Trial Ex. 259 (Rains emails sent as VP Sales, East Region of

Republic Serv., Inc.); **Att. 4,** 5/13/13 Trans., 117:1-7 (Jameson is a VP of Republic Serv., Inc.); **Att. 5,** Pl. Trial Ex. 186 (Krall sending email as SVP of Republic Serv., Inc).

All other aspects of her employment, including Human Resource functions, were controlled by Jason Callaway and Catharine Ellingsen, both of whom were employed by Republic Services. *See* **Att. 2**, Ellingsen's Testimony, 5/14/13, Part I, 15:19-25 (Ellingsen was SVP of Republic Serv., Inc.); *see also* Ellingsen's Testimony, **Att. 6,** 5/14/13, Part II, 5:16-20.

Moreover, Ms. Taylor's employment agreement containing her non-compete and non-solicitation obligation was between her and "Republic Services, Inc.," identifying her as "Employee." *See* Non-Competition, Non-Solicitation and Confidentiality Agreement, **Att. 7,** Pl. Trial Ex. 16. Ms. Taylor identified herself as an employee of Republic Services, Inc. *See* **Att. 8,** Pl. Trial Ex. 151 (email from J. Taylor to D. Jameson, *et al.*, copying C. Rains and R. Krall).

Catharine Ellingsen, as Senior Vice-President of Human Resources for Republic Services, Inc., had the ability to terminate Ms. Taylor's employment and did terminate her employment. *See* Ellingsen's Testimony, 5/14/13, Part I, **Att. 2,** 15:19-25 (SVP of Republic Serv., Inc.); 112:21-113:8 ("The decision had been made and the decision was going to stand and I wasn't going to rescind it").

Accordingly, the evidence establishes that Republic Services, Inc. operated, managed, supervised, and controlled all aspects of its East Region "business unit," and all aspects of Ms. Taylor's work pertaining to same.

**2. Republic Employs 7,000 to 8,000 in Each Region, Including the East Region**

Catharine Ellingsen, Republic's Senior Vice-President of Human Resources testified that each of Republic's four regions employed 7,000 to 8,000 employees:

> Q. You mentioned the business conditions being a variable at impacts how regions operate. Can you give us an example how business conditions in one region might be different than other?
>
> A. Yes, although the regions are all approximately the same from a revenue standpoint. They each have approximately, you know, 7 to 8,000 employees, the nature of our business is different depending on what part of the country you're in.

5/14/13 Trans., Part I, **Att. 2**, 19:19-20:2; *see also* 15:24-25 (Ellingsen's title).

In essence, the total number of Republic employees is approximately 24,000-32,000.

The Court awarded Ms. Taylor, "the maximum amount of damages allowed under the statutory cap." Memo. Opinion at 57. However, per 42 U.S.C. §1981a(b)(3)(D), the appropriate amount for a company that employees more than 500 employees is $300,0000. Accordingly Ms. Taylor requests the Court reconsider limiting the award to the $50,000 cap and increase the amount to $300,000.

## II. PREJUDMENT INTEREST IS APPROPRIATE

The award of prejudgment interest is a matter within the district court's discretion. *See, e.g., United States v. Gregory*, 818 F.2d 1114, 1118 (4th Cir. 1987), *cert. denied*, 484 U.S. 847 (1987) (an award of prejudgment interest as a compound to relief is entrusted to the discretion of the district court); *Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993) (*quoting Clarke v. Frank*, 960 F.2d 1146, 1153-54 (2d Cir. 1992) (citations omitted)); *see also McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372-73 (7th Cir. 1992) (holding that "prejudgment interest should be presumptively available to victims of federal law violations.") (citations omitted)).

While, prejudgment interest is frequently denied when the back pay award is not readily determinable or when the plaintiff fails to raise issues in a timely or an appropriate manner, neither concern is at issue. The back pay award was readily determinable and the plaintiff made her request for prejudgment interest on that award in a timely manner.[2] The court, then, is left with the general policy that, absent the aforementioned concerns, prejudgment interest is appropriate to make a victim whole. *See Maksymchuk*, 987 F.2d at 1077 (*quoting Pegues v. Mississippi State Employment Serv.*, 899 F.2d 1449, 1453 (5th Cir. 1990)).

The basic purpose of prejudgment interest is to correct for the fact that a dollar yesterday was worth more than a dollar today. *See, e.g., Maksymchuk*, 987 F.2d at 1076-77.

In *Cooper v. Paychex, Inc.*, 960 F. Supp. 966 (E.D.V.A. 1997, Cacheris, J.), a Title VII employment discrimination case, the Court held that "the Virginia statutory rate should be applied" to calculate prejudgment interest. *Id.* at 974. In adopting the then 9% Virginia rate, the court also noted that it knew "of no binding precedent which dictates otherwise." *Id.* Additionally, in *Quesinberry v. Life Insurance Co. of North Am.*, 987 F.2d 1017, 1031 (4th Cir. 1991) and *EEOC v. Liggett & Myers, Inc.*, 690 F.2d 1072, 1074-75 (4th Cir. 1982), the Fourth Circuit upheld the respective district courts' application of the state interest rate even though the use of such rate was not binding.

If the Court were to award Plaintiff interest in accordance with Va. Code § 6.2-301, at six-percent (6%) per annum), two years of interest (September 2011-September 2013) on the principal back pay amount of $377,734 is $45,328.08.

[2] *See* Pl.'s Proposed Findings of Fact and Law at ¶118; *see also* 5/9/13 Trans., **Att. 9**, at 225:4-6 (Expert Economist Bill Foote specifically excluded pre-judgment interest from his calculations).

**CONCLUSION**

For the reasons set forth above, Ms. Taylor, requests that this Court reconsider its compensatory damages award of $50,000, and increase the award to $300,000 based on the evidence presented.

Ms. Taylor also requests the Court consider an award to her of prejudgment interest.

September 24, 2013

Respectfully submitted,

*/s/ CARLA D. BROWN*

Elaine Charlson Bredehoft, VSB No. 23766
ecb@cbcblaw.com
Carla D. Brown, VSB No. 44803
cbrown@cbcblaw.com
Brian A. Scotti, VSB No. 74510
bscotti@cbcblaw.com
CHARLSON BREDEHOFT COHEN
BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
*Counsel for Plaintiff, Jennifer J. Taylor*

**CERTIFICATE OF SERVICE**

I hereby certify on the 24th day of September 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing to the following:

Rhett E. Petcher, Esq.
rpetcher@seyfarth.com
Raymond C. Baldwin, Esq. (admitted *pro hac vice*)
Rbaldwin@Seyfarth.com
SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004
(202) 828-3583 Telephone / (202) 828-5393 Facsimile
*Counsel for Defendants, Republic Services, Inc., Republic Services of Virginia, LLC, Jason Callaway, Ronald Krall, Douglas Murphy and Christopher Rains*

Joleen R. Okun, Esq.
Joleen.Okun@ogletreedeakins.com
Mark G Kisicki, Esq. (admitted *pro hac vice*)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C. 20006
(202) 887-0855 Telephone /(202) 887-0866 Facsimile
*Counsel for Defendants, Republic Services, Inc., Republic Services of Virginia, LLC, Jason Callaway, Ronald Krall, Douglas Murphy and Christopher Rains*

*/s/ CARLA D. BROWN*
Elaine Charlson Bredehoft, VSB No. 23766
ecb@cbcblaw.com
Carla D. Brown, VSB No. 44803
cbrown@cbcblaw.com
Brian A. Scotti, VSB No. 74510
bscotti@cbcblaw.com
CHARLSON BREDEHOFT COHEN BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
*Counsel for Plaintiff, Jennifer J. Taylor*